FILED
COURT OF APPEALS
DIVISION II

2014 MAR 11 AM 8: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43413-0-II |
| Respondent, | |
| v. | |
| DANIELLE PRICE NEWTON, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J.P.T.[1] — Danielle Newton appeals her convictions for possession of a controlled substance with intent to deliver—methamphetamine (count one) and possession of a controlled substance—methamphetamine (count three). Newton argues (1) the trial court improperly gave an unwitting possession jury instruction on count one and that her counsel was ineffective for requesting the instruction; (2) the search warrant was unconstitutionally overbroad and her counsel was ineffective for failing to challenge the search warrant and file a motion to suppress evidence seized pursuant to the search warrant; (3) the trial court violated her constitutional right to present a defense when it refused to admit a portion of her statement under ER 106; and (4) the accomplice liability statute is unconstitutional. We hold the warrant was not overbroad, Newton's counsel was not ineffective for failing to file a motion to suppress, the trial court did not violate Newton's right to present a defense, and the accomplice liability statute is not unconstitutional. Accordingly, we affirm Newton's conviction for count three. However, because the unwitting possession instruction improperly shifted the burden of proof on count one, we reverse that conviction and remand for further proceedings.

---

[1] Judge Joel Penoyar is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAP 21(c).

FACTS

I. BACKGROUND

On the evening of December 9, 2011, police officers stopped the vehicle Nathan Gadberry was driving and Newton was riding as a passenger. After removing Gadberry and Newton from the vehicle, the officers placed them under arrest and conducted a search of their persons incident to their arrest. While conducting a search of Newton, an officer asked her if she had any weapons or sharp objects, and she responded that she had a syringe with methamphetamine in her pocket. The officers then placed Newton in the back of a police vehicle and read her *Miranda*[2] rights. Newton waived her *Miranda* rights and again told the officers that the syringe found in her pocket contained methamphetamine. The officers also found a digital weighing scale on Gadberry.

Detective Bill Sofianos testified that he saw a blue container holding what appeared to be methamphetamine in the center console area when the officers removed Newton and Gadberry from the vehicle. The officers sealed the vehicle and towed it to a secure facility until a search warrant could be obtained. Sofianos applied for and obtained a search warrant for the vehicle.

When searching the vehicle, officers found a glass smoking pipe, a scale, two spoons, several cell phones, and Newton's identification, in addition to the blue container Sofianos already saw. The scale found on Gadberry, the syringe found on Newton, and the scale, spoons, and pipe found in the vehicle all contained methamphetamine. The blue container from the center console contained 4.8 grams of methamphetamine. Detective Scott Holmes analyzed the data from one of the seized cell phones and found several text messages from the day before and the day of Newton's arrest as well as photos of Newton and Gadberry. The State charged

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

Newton with possession of a controlled substance with intent to deliver—methamphetamine and possession of a controlled substance—methamphetamine.[3]

## II.    PROCEDURAL HISTORY

The State tried Newton, along with Gadberry.  On the day of the readiness hearing on February 2, 2012, the State provided Newton with a CD containing evidence obtained from one of the cell phones seized from the vehicle.  At the readiness hearing, Newton was given the opportunity to continue the trial in order to move to suppress the recently produced evidence. Newton's counsel stated that Newton felt her constitutional right to a speedy trial was more important than addressing potential CrR 3.6 issues.  On the first day of trial on February 6, 2012, Newton's counsel verbally objected to the introduction of three photographs from the CD and argued the search warrant was overbroad.  Newton's counsel, however, did not file a motion to suppress, and stated that he saw no basis to bring a suppression motion and that Newton wanted to proceed to trial instead of continuing to allow time to file a motion to suppress.

The State also iterated on the record that Newton wished to proceed to trial versus continuing to pursue a motion to suppress:

> [W]e want [the] Defendants to be advised of all their rights as well.  And, I think in this case, we have some unusual circumstances that I want to make sure that the Court makes very clear to the Defendants that this is the first trial setting, that we're—let's see, at least right now I don't know if there are any other motions from Defendants but that we are proceeding to trial and there has been no motion to suppress and that they are aware that they have waived that right because they think their right to a speedy trial is more important than possibly filing a motion to suppress.

---

[3] The State also charged Gadberry with possession of a controlled substance with intent to deliver—methamphetamine (count one) and possession of a controlled substance—methamphetamine (count two).

3

1 Report of Proceedings (RP) at 81. Newton's counsel confirmed that Newton wished to proceed to trial rather than continue the trial. The trial court did not suppress any of the evidence and admitted three text messages and three photographs taken from the phone seized from the vehicle.

At a CrR 3.5 hearing before trial, the trial court admitted Newton's post-*Miranda* confession that the syringe found in her pocket contained methamphetamine. At trial, Newton also attempted to admit a pre-*Miranda* statement she allegedly made to the officer that conducted the search incident to her arrest that the syringe with the methamphetamine in her pocket was the only methamphetamine she had. The trial court ruled this statement inadmissible hearsay and that it did not meet any of the hearsay exceptions.

Newton's counsel requested that the trial court give an unwitting possession instruction for count one, which the trial court gave. The trial court also gave an accomplice liability instruction. The jury found Newton guilty on both count one and count three and agreed to the special verdict regarding a school zone sentencing enhancement for count one. Newton appeals.

ANALYSIS

I.  UNWITTING POSSESSION JURY INSTRUCTION

Newton argues the jury instruction on unwitting possession violated her Fourteenth Amendment right to due process because it improperly shifted the burden of proof on count one to the defense. Newton also argues that her trial counsel was ineffective for requesting the unwitting possession instruction. Because Newton's counsel erroneously requested the unwitting possession jury instruction, which we presume prejudiced Newton because it misstated the law, we reverse Newton's conviction on count one and remand for further proceedings.

When an instruction given is one defense counsel proposed, the invited error doctrine restrains us from reversing the conviction based on an error in that jury instruction. *State v. Henderson,* 114 Wn.2d 867, 870, 792 P.2d 514 (1990); *see also State v. Studd,* 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999). Even where constitutional rights are involved, we are "precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording." *State v. Winings,* 126 Wn. App. 75, 89, 107 P.3d 141 (2005). We review such challenges, however, through an ineffective assistance of counsel claim. *Studd,* 137 Wn.2d at 550-51. Because Newton's trial counsel proposed the unwitting possession instruction, we do not consider Newton's direct constitutional challenge to the instruction and, instead, consider only Newton's ineffective assistance of counsel claim.

To prove ineffective assistance of counsel, Newton must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and that the deficient performance prejudiced her. *State v. Thomas,* 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Performance is not deficient if counsel's conduct can be characterized as a legitimate trial strategy. *State v. Kyllo,* 166 Wn.2d 856, 863, 215 P.3d 177 (2009). To establish prejudice, the defendant must show a reasonable probability that the deficient performance affected the outcome of the trial. *Thomas,* 109 Wn.2d at 226 (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. We review ineffective assistance of counsel claims de novo. *State v. Sutherby,* 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

A.    DEFICIENT PERFORMANCE

Here, the State charged Newton with unlawful possession of a controlled substance with intent to deliver and unlawful possession of a controlled substance. Arguably, the unwitting possession instruction was appropriate for the possession charge. However, Newton's trial counsel proposed an unwitting possession jury instruction for only the possession with intent to deliver charge, which the trial court gave.

The State has the burden to prove each element of a charged crime beyond a reasonable doubt. *In re Matter of Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Unwitting possession is an affirmative defense to unlawful possession of a controlled substance. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004). In *Bradshaw*, our Supreme Court clarified that unlawful possession of a controlled substance does not have a knowledge element. 152 Wn.2d at 538. Therefore, unwitting possession is an affirmative defense to possession, which ameliorates the harshness of a strict liability crime. *Bradshaw*, 152 Wn.2d at 538. "'To establish [this] defense, the defendant must prove, by a preponderance of the evidence, that . . . her possession of the [controlled] substance was unwitting.'" *State v. Buford*, 93 Wn. App. 149, 152, 967 P.2d 548 (1998) (quoting *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931 (1998)). When used as a defense to possession, the unwitting possession instruction does not shift the burden of proof. *Bradshaw*, 152 Wn.2d at 538.

In contrast, the elements of the crime of unlawful possession with intent to deliver include a requisite mental state—intent. *State v. Sims*, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992). We presume that one who acts with the requisite mental state of intent also acts with knowledge; thus, "knowledge" is not a separate element of possession with intent to deliver, but rather is subsumed within "intent." *Sims*, 119 Wn.2d at 142. Thus, one must know it is a

6

controlled substance in order to "deliver" it under the statute. *State v. Sanders*, 66 Wn. App. 380, 390, 832 P.2d 1326 (1992). Unwitting possession is not an affirmative defense to the crime of possession with intent to deliver because "[i]t is impossible for a person to intend to . . . deliver a controlled substance without knowing what he or she is doing." *Sims*, 119 Wn.2d at 142. Therefore, requiring the defendant to prove unwitting possession by a preponderance of the evidence in an unlawful possession with intent to deliver charge improperly shifts the State's burden to prove the mental state element of intent (in which "knowledge" is subsumed) to the defendant.

Further, Division Three of this court held an unwitting possession instruction for an unlawful possession of a firearm charge erroneously placed the burden of proof on the defense because under RCW 9.41.040, the State has the burden of proving the requisite mental state. *State v. Carter*, 127 Wn. App. 713, 717, 112 P.3d 561 (2005) (citing *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000)). In *Carter*, defense counsel's proposal of an unwitting possession instruction was deficient and was not a legitimate trial tactic. 127 Wn. App. at 717.

Here, the jury was given a "to convict" instruction for unlawful possession with intent to deliver, which instructed that the State had the burden to prove every element beyond a reasonable doubt, including the requisite mental state of intent. But the jury was also given the unwitting possession instruction for the unlawful possession with intent to deliver charge, which instructed that Newton had the burden to prove unwitting possession by a preponderance of the evidence. Additionally, during closing argument, Newton's counsel argued that if the jury somehow determined that Newton had constructive possession of the methamphetamine in the blue container, then Newton would have to "prove by a preponderance of the evidence that it is

more likely true than not true that she didn't know she had it" per the unwitting possession instruction. 4B RP at 1050.

The unwitting possession instruction misled the jury to believe Newton had the burden to prove the requisite mental state of intent, which conflicted with the State's burden to prove the requisite mental state beyond a reasonable doubt. This inconsistent instruction was a clear misstatement of the law.

Further, requesting the unwitting possession jury instruction cannot be characterized as a tactical decision. While there may be the rare case where defense counsel would legitimately want to undertake the burden of proving unwitting possession when the State has the contrary burden of proving knowing possession beyond a reasonable doubt, the record here does not support any purposeful strategy in undertaking that burden of proof. *See State v. Michael*, 160 Wn. App. 522, 527-28, 247 P.3d 842 (2011). Accordingly, we hold that defense counsel's performance was deficient in proposing the unwitting possession instruction.

B.    PREJUDICE

"When instructions are inconsistent, it is the duty of the reviewing court to determine whether 'the jury was misled as to its function and responsibilities under the law' by that inconsistency." *State v. Wanrow*, 88 Wn.2d 221, 239, 559 P.2d 548 (1977) (quoting *State v. Hayes*, 73 Wn.2d 568, 572, 439 P.2d 978 (1968)). If the inconsistency results from a clear misstatement of the law, the misstatement is presumed to have misled the jury in a manner prejudicial to the defendant. *Wanrow*, 88 Wn.2d at 239. In *Carter*, Division Three of this court held that giving an unwitting possession instruction when the State had the burden of proving the requisite mental state, misled the jury to believing the defendant had the burden of proving the

8

culpable mental state and was a misstatement of the law; therefore, the defendant was presumed to be prejudiced. *Carter*, 127 Wn. App. at 718.

Here, the combination of the unwitting possession instruction and the to convict instruction created a clear misstatement of the law. Newton is presumed to have been prejudiced and is entitled to a reversal on the unlawful possession of a controlled substance with intent to deliver charge.

Because we reverse only count one due to the erroneous unwitting possession instruction, we still address Newton's remaining arguments because they may be relevant on remand and also pertain to count three.

II.    SEARCH WARRANT

Newton argues we should reverse her convictions because the evidence used to convict her was obtained under an overbroad search warrant. At trial, Newton objected to only three photographs taken from a cell phone found in the car in which she was riding, arguing the search warrant was overbroad. She did not file a motion to suppress any evidence obtained pursuant to the search warrant. Because Newton failed to properly raise this argument below, with the exception of the three photographs, and failed to meet her burden of showing the alleged error was a manifest constitutional error reviewable under RAP 2.5(a)(3), we directly review only her challenge to the three photographs. Because the warrant met the probable cause and particularity requirements, it was not overbroad.

Newton also argues she was denied effective assistance of counsel because her attorney failed to file a written motion to suppress evidence seized pursuant to the search warrant. Because the warrant was not overbroad, Newton's counsel was not ineffective for not filing a motion to suppress.

9

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." These constitutional provisions impose two requirements; first, that the warrant be supported by probable cause, and second, that the warrant particularly describe the place to be searched and the items to be seized. *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992).

"Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "Accordingly, 'probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997) (citing WAYNE R. LaFAVE, SEARCH & SEIZURE § 3.7(d), at 372 (3d ed. 1996)).

To meet the particularity requirement "a search warrant must be sufficiently definite so that the officer executing the warrant can identify the property sought with reasonable certainty." *State v. Stenson*, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997). The required degree of specificity "varies according to the circumstances and the type of items involved." *Stenson*, 132 Wn.2d at 692. The particularity requirement serves the dual functions of "limit[ing] the executing officer's discretion" and "inform[ing] the person subject to the search what items the officer may seize." *State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993).

10

A warrant is "overbroad" if either requirement is not satisfied. *State v. Maddox*, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003), *aff'd* 152 Wn.2d 499, 98 P.3d 1199 (2004). Therefore, a warrant can be overbroad "either because it fails to describe with particularity items for which probable cause exists, or because it describes, particularly or otherwise, items for which probable cause does not exist." *Maddox*, 116 Wn. App. at 805 (footnotes omitted).

We review the trial court's probable cause and particularity determinations de novo, giving deference to the magistrate's determination. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). We evaluate search warrants in a common sense, practical manner and not in a hypertechnical sense. *Perrone*, 119 Wn.2d at 549.

The warrant here met the probable cause requirement. The affidavit sufficiently set out facts and circumstances relating to the crimes of possession of a controlled substance with intent to deliver and possession of a controlled substance. It stated that the officers had a warrant for Newton's and Gadberry's arrest; when the officer's contacted Newton and Gadberry's vehicle neither Newton nor Gadberry followed commands to put their hands up; when the officers conducted searches incident to their arrest, they found a scale in Gadberry's pocket that field tested positive for methamphetamine and a syringe with liquid in Newton's pocket that field tested positive for methamphetamine; from outside the vehicle the officers observed a cell phone and blue container in the center console area that appeared to contain large shards of methamphetamine that had not yet been "stepped on" (or broken down to smaller shards that

11

look more like the cutting agents added to the methamphetamine)[4]; and Newton admitted that she had methamphetamine on her person and that the methamphetamine in the car was not hers. Based on the facts and his experience, Sofianos authored an affidavit and requested a warrant to search Gadberry and Newton's car.

Newton argues the officers relied on "conclusory predictions [and] [b]lanket inferences . . . substitut[ing] generalities for the required showing of reasonably specific 'underlying circumstances.'" *Thein*, 138 Wn.2d at 147-48 (quoting *State v. Dalton*, 73 Wn. App. 132, 140, 868 P.2d 873 (1994)). We disagree.

The affidavit provided specific facts that controlled substances and distribution equipment that tested positive for methamphetamine were found on Gadberry's and Newton's person after they were removed from the vehicle and that a large quantity of methamphetamine was observed inside the vehicle. This was sufficient "to establish a reasonable inference that the defendant[s were] probably involved in criminal activity and that evidence of the crime can be found at the place to be searched;" here, the car Gadberry and Newton were in when they were arrested. *Thein*, 138 Wn.2d at 140.

The warrant also met the particularity requirement. Although the search warrant did not state the crimes under investigation, it did specifically list the items to be searched for and seized, which included methamphetamine and paraphernalia used in the ingestion or consumption of methamphetamine, methamphetamine distribution equipment, and "photographs . . . in order to establish dominion and control of the vehicle, as well as to confirm the identity of

---

[4] The State's expert witness testified that dealers "step on" the methamphetamine to increase the amount of methamphetamine they can sell to make more money. By crushing the methamphetamine and adding a similar looking cutting agent, a dealer can turn one pound of methamphetamine into three pounds. This raised the likelihood that items related to processing the methamphetamine would be found somewhere in the vehicle.

the defendant(s)."[5] *See* Ex. 62. This description was sufficiently definite, allowing the officers "executing the warrant [to] identify the property sought with reasonable certainty." *Stenson*, 132 Wn.2d at 692. Because the warrant met the probable cause and particularity requirements, it was not overbroad. Accordingly, Newton's counsel was not ineffective for not filing a motion to suppress.

III.   OPPORTUNITY TO PRESENT A DEFENSE

Newton argues she was denied her constitutional right to present a defense when the trial court refused to admit a portion of her statement under ER 106 and the common law rule of completeness. Because ER 106 does not apply to Newton's alleged oral statement, this argument fails.

A defendant in a criminal trial has a constitutional right to present relevant, admissible evidence in her defense. *State v. Sublett*, 156 Wn. App. 160, 198, 231 P.3d 231 (2010). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). However, a criminal defendant's right to present a defense is not

---

[5] The search warrant also authorized the search and seizure of "[c]ellular telephones and their electronically stored memory." Ex. 62. Newton argues a search of a cellular telephone is protected by the First Amendment and requires "scrupulous exactitude" when describing the materials to be seized. Appellant's Br. at 16. But she provides no law to support her argument that cellular telephones are protected by the First Amendment. "Parties raising constitutional issues must present considered arguments to this court." *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). "'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *Johnson*, 119 Wn.2d at 171 (quoting *In re Request of Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). The Supreme Court recently held that a defendant has a privacy interest in text message conversations from warrantless intrusion. *State v. Hinton*, No. 87663-1, 2014 WL 766680, at *1 (Wash. Feb. 27, 2014). In this case, however, there was a search warrant for the cell phone and thus *Hinton* is not controlling. Because Newton did not substantiate this constitutional argument and did not cite to any legal authority that a search and seizure of a person's cellular phone implicates First Amendment rights, we do not consider this argument.

absolute; a defendant seeking to present evidence must show that the evidence is at least minimally relevant to a fact at issue in the case. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). We review a trial court's ruling on the admission of evidence to determine whether it was manifestly unreasonable or based on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

ER 106 provides that: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it." ER 106 is limited to a writing or recorded statement. *State v. Perez*, 139 Wn. App. 522, 531, 161 P.3d 461 (2007).

Here, Newton contends she told the arresting officers that the syringe found in her pocket after her arrest was the only methamphetamine she had. When questioned at the CrR 3.5 hearing regarding her statements to the officers, Newton did not testify that she told the officers that the methamphetamine in her pocket was the only methamphetamine she had. Instead, she testified that when an officer conducted a search incident to her arrest, he asked her if she had any sharp objects or weapons in her pockets, and she responded that she had a syringe that contained methamphetamine in her pocket. At trial, when Newton's counsel cross-examined the lead detective investigating Newton's case, he asked, "she said, all the methamphetamine she had was in her syringe, right?" 2A RP at 274. The State objected and the trial court ruled the alleged statement was hearsay and did not fall under any of the exceptions, and was thus inadmissible unless Newton took the stand in her defense.

14

43413-0-II

Because ER 106 applies only to a writing or a recorded statement, it does not apply Newton's alleged oral statement and does not require that Newton's statement be admitted to the jury. Rather, as the trial court found, ER 801 provides the proper framework.

IV.   CONSTITUTIONALITY OF ACCOMPLICE LIABILITY STATUTE

Newton next argues that the accomplice liability statute is unconstitutionally overbroad because it criminalizes speech protected by the First and Fourteenth Amendments. Prior case law compels us to reject this argument.

Division One of this court rejected an identical argument. *State v. Coleman*, 155 Wn. App. 951, 961, 231 P.3d 212 (2010). The *Coleman* court held that because the accomplice liability statute "requires the criminal mens rea to aid or agree to aid the commission of a specific crime with knowledge the aid will further the crime, . . . [the statute's] sweep avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime." 155 Wn. App. at 960-61 (citing *Brandenburg v. Ohio*, 395 U.S. 444, 448, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969)). In *State v. Ferguson*, 164 Wn. App. 370, 376, 264 P.3d 575 (2011), we explicitly adopted Division One's rationale in *Coleman* and held that the accomplice liability statute is not unconstitutionally overbroad. *Ferguson* controls here, and Newton's argument fails.

15

43413-0-II

We affirm Newton's conviction for count three. Because the unwitting possession instruction improperly shifted the burden of proof on count one, we reverse Newton's conviction on count one and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.P.T.

We concur:

Maxa, J.

Lee, J.

16